## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VERNON L. EALY, JR.,** | : | No. 3:24-CV-0126 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER SCHELL, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Vernon L. Ealy, Jr., initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging multiple, unrelated constitutional violations by prison officials at Franklin County Jail and Dauphin County Prison.  The court will dismiss Ealy's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted but will provide limited leave to amend.

## I.    BACKGROUND

In his complaint, Ealy asserts that he is a pretrial detainee and is raising numerous claims under Section 1983.  (Doc. 1 at p. 1).  He first recounts that, on July 10, 2023, he was admitted into booking at Franklin County Jail (FCJ) and spent one night there before being transferred to Dauphin County Prison (DCP).  (Id. ¶¶ 3, 12, 16).  Ealy contends that he was transferred to DCP—in his opinion,

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

"one of the worst prisons in [A]merica"—out of retaliation for filing unspecified "grievances and past lawsuits."  (Id. ¶¶ 17-18, 41).  Ealy does not indicate when he was transferred from DCP back to FCJ, but it appears to have taken place sometime in October 2023.  (See id. ¶¶ 37, 38; see also id. at pp. 6, 8). Ealy lodges this retaliation claim against FCJ warden Christopher Schell and the warden of DCP, as well as "unknown [o]fficers at FCJ" who transported Ealy to DCP.  (Id. ¶¶ 4, 9, 14-15, 18).

Ealy next contends that, on July 13, 2023, he was ordered to occupy the top bunk of a multi-inmate cell even though he had informed an unidentified intake nurse that his medical conditions required a classification as "bottom bunk bottom tier status."  (Id. ¶¶ 19-20).  He further alleges that, despite informing the DCP medical department and unidentified corrections officers that it was "getting difficult" to access the top bunk and that doing so was causing him pain, it took "a week or two" and "multiple sick calls" before he was moved to a different cell and given bottom-bunk status.  (Id. ¶¶ 20-24).  He avers that this top-bunk placement caused "injuries in his groin area and legs/ankles," including being diagnosed with a hernia.  (Id. ¶¶ 24, 38).

In another unrelated incident, Ealy alleges that, upon his initial booking at FCJ, unidentified FCJ officials took his $184 and placed it into his prisoner trust fund account.  (Id. ¶ 13).  According to Ealy, the same or other unidentified FCJ

2

officials "kept [his] check for several weeks" instead of transferring the funds to DCP. (Id.)  When the money was eventually transferred, Ealy asserts that FCJ officials had improperly removed $125 from the account.  (Id. ¶ 26).  Ealy contends that he "fought for several weeks to have his funds replaced" and prison officials eventually complied with his request, but not before he had missed making a payment for his (presumably offsite, private) storage that was "lost" when it "was auctioned."  (Id. ¶¶ 13, 26-27).

In his next unrelated claim, Ealy contends that his conditions of confinement at DCP were unconstitutional.  (See id. ¶¶ 28-30).  He alleges that his cell lacked adequate ventilation, was unbearably hot, had plumbing issues, and was infested by rodents.  (Id.)  He maintains that he "submitted grievances" and request slips regarding the conditions.  (Id. ¶ 30).  He does not explain who was responsible for the conditions, how long he was exposed to them, who knew about the conditions, or whom (if anyone) he informed about them.

In his fifth and final claim, Ealy lodges serious allegations that, during his detainment at DCP, his medical requests were ignored and his medication was unlawfully denied.  (See id. ¶¶ 31-37).  He claims that he experienced "massive nose bleeds and headaches," went through "withdrawal" from the lack of his medications, and eventually suffered a stroke during his sleep.  (Id. ¶¶ 31-33).  He avers that his medical complaints regarding the stroke likewise went ignored.

3

(Id. ¶ 34). Ealy recounts that he was eventually admitted to an outside hospital for a CT scan due to his serious medical conditions, after which he was transferred back to FCJ. (Id. ¶ 37).

Ealy seeks retroactive declaratory relief that his rights were violated, prospective injunctive relief in the form of a transfer to a different prison and better medical treatment, compensatory damages, and punitive damages. (Id. at pp. 5-6). However, he fails to state a claim upon which relief may be granted, so the court must dismiss his complaint.

## II.   STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

4

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions,

which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679).  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679).  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Ealy proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Ealy, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.  DISCUSSION

Before addressing the sufficiency of Ealy's complaint, the court must identify the claimed constitutional violations. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).  As best the court can ascertain, Ealy is asserting the following

6

constitutional torts: (1) First Amendment retaliation regarding the transfer to DCP; (2) Fourteenth Amendment[2] deliberate indifference to serious medical needs concerning the top-bunk placement at DCP; (3) Fourteenth Amendment deprivation of property without due process of law regarding the lost storage property; (4) Fourteenth Amendment conditions of confinement for the alleged unlawful conditions at DCP; and (5) Fourteenth Amendment deliberate indifference to serious medical needs concerning the lack of appropriate medical care resulting in a stroke.  It appears that Ealy is also attempting to assert state-law claims of negligence for some of his allegations, although it is impossible to discern the contours of these claims or against whom they are lodged.

Other than Ealy's opening retaliation claim, his complaint is hopelessly confused and commingled.  Almost all the defendants are unidentified, and it is impossible to determine which claims are lodged against which defendant or defendants.  Various defendants are listed in the "Parties" section of the complaint but appear nowhere in the allegations of wrongdoing.  Moreover,

---

[2] Although Ealy invokes the Eighth Amendment, he avers that he was a pretrial detainee (not a convicted prisoner) at the time of the alleged events, so his conditions-of-confinement and medical indifference claims implicate the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishments.  See Jacobs v. Cumberland Cnty., 8 F.4th 187, 193-94 (3d Cir. 2021); Thomas v. Cumberland Cnty., 749 F.3d 217, 223 n.4 (3d Cir. 2014); Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (Hubbard I); see also Paulino v. Burlington Cnty. Jail, 438 F. App'x 106 (3d Cir. 2011) (nonprecedential) (explaining that "sentenced prisoners are protected from punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment" (citing Hubbard I, 399 F.3d at 166-67)).

many—if not all—of Ealy's claims are unrelated and target different defendants,
thus violating the permissive joinder rules found in Federal Rule of Civil
Procedure 20.  Finally, some of the named defendants are not "persons" for
which Section 1983 liability applies.  The court will discuss each of Ealy's many
pleading deficiencies in turn.

### A.   "Person" for Section 1983

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege "the
violation of a right secured by the Constitution and laws of the United States, and
must show that the alleged deprivation was committed by a person acting under
color of state law."  Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (citing Imbler v.
Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).  Only "persons"
are subject to suit under Section 1983, and entities such as prisons, agencies,
and private businesses do not qualify as "persons."  See Will v. Mich. Dep't of
State Police, 491 U.S. 58, 64-65, 71 (1989); Slagle v. Cnty. of Clarion, 435 F.3d
262, 264 n.3 (3d Cir. 2006) (affirming on other grounds and observing that the
district court properly "dismissed Clarion County Jail as a defendant in this case,"
quoting the district court's reasoning that "'it is well established in the Third
Circuit that a prison is not a "person" subject to suit under federal civil rights
laws'"); Stankowski v. Farley, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (finding
that PrimeCare Medical is not a "person for purposes of Section 1983" and thus

not subject to liability under that statute); see also Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (holding that "New Jersey Prison Medical Department" was a state agency and not a "person" under Section 1983); Ali v. Ann Klein Forensic Ctr., No. 21-CV-316, 2022 WL 138084, at *3 (D.N.J. Jan. 14, 2022) (finding that a state hospital "is not a 'person' within the meaning of § 1983").

Ealy attempts to sue "PrimeCare" medical and "GTL," the alleged owner of the electronic tablets used by DCP.  (See Doc. 1 ¶¶ 6, 10).  These entities are not "persons," and therefore Ealy has failed to assert a viable Section 1983 claim against them.  Moreover, Ealy does not allege an unconstitutional policy or custom by PrimeCare or GTL such that a Section 1983 suit could be maintained against Dauphin County or Franklin County.  See, e.g., Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

### B.    First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)).  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse

9

action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.  Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Causation for a First Amendment retaliation claim can be established in a variety of ways.  One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.  See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.  See Conard v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018).  However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."  Id.  Another approach is to demonstrate "a pattern of antagonism coupled with timing."  DeFlaminis, 480 F.3d at 267.  Finally, causation can be inferred "from the evidence gleaned from the record as a whole."  Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).  Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected

activity[.]" Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

Ealy's retaliation claim fails for two reasons. First, a mere transfer from FCJ to DCP (both located in south central Pennsylvania and less than 60 miles apart), without more, does not rise to the level of an "adverse action" for a First Amendment claim. See Collazo v. Rozum, 646 F. App'x 274, 276 (3d Cir. 2016) (nonprecedential) (explaining that inmate had failed to allege "how the prison transfer was an adverse action"). Although it is true that, under some circumstances, a facility transfer could be sufficient to deter a person of ordinary firmness from exercising their constitutional rights, those circumstances are not alleged here. See, e.g., Rauser, 241 F.3d at 333 (noting that transfer to a distant prison where family could not visit could implicate adverse action); Siggers-El v. Barlow, 412 F.3d 693, 702, 704 (6th Cir. 2005) (finding that prison transfer which caused loss of prison job and limited access to plaintiff's attorney could amount to an adverse action); Williams v. Wetzel, No. 1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved ones and/or visitation" and affected his parole recommendation).

Even assuming, for the sake of argument, that the transfer from FCJ to DCP could be considered an adverse action, Ealy has failed to plausibly plead

causation.  He contends that the wardens and unidentified FCJ officers transferred him in retaliation for filing unspecified "grievances and past lawsuits." (Doc. 1 ¶ 18).  However, such vague and conclusory allegations do not suffice to show causation.

It is well settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit or prison grievance) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action.  See, e.g., Nunez v. Wetzel, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); Kendrick v. Hann, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); Murray v. Smithbower, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); Horan v. Collins, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); Victor v. Lawler, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); Evans v. Rozum, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); Royster v. Beard, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), aff'd 308 F.

App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis). Such general allegations fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the alleged adverse action.

Ealy's allegations do not specify what previous grievances or lawsuits he is referring to, whom those complaints targeted or affected, or how any defendant had knowledge of this alleged protected conduct.  He therefore has failed to plausibly plead causation, the third element of a retaliation claim.  Because Ealy fails to adequately plead two out of three retaliation elements, his claim must be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### C.    Fourteenth Amendment Deprivation of Property

Ealy contends that unidentified FCJ officials improperly withheld transfer of his prisoner account funds, causing the loss of his personal property in storage. As best the court can discern, the only possible constitutional tort that Ealy could be asserting is a Fourteenth Amendment claim of deprivation of property without due process of law.  See Hudson v. Palmer, 468 U.S. 517 530, 533 (1984).  This constitutional tort, however, has significantly limited application.  Most acutely, such a due process claim is unavailable when "adequate state post-deprivation remedies are available."  Id. at 533.

13

Ealy's complaint is silent as to whether adequate state post-deprivation remedies exist for the loss of his property, but the court notes that state tort law likely provides a remedy for his claim.  See 42 PA. CONS. STAT. § 8542(a), (b)(2) (waiving local governmental immunity for negligent acts related to the "care, custody or control of personal property of others in the possession or control of the local agency"); see also Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies).  The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for loss-of-property claims, even if the plaintiff disagrees with the results.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

Accordingly, because adequate state post-deprivation remedies are available, any constitutional deprivation-of-property claim Ealy is asserting must be dismissed for failure to state a claim upon which relief may be granted. Dismissal of this claim will be with prejudice, as granting leave to amend would be futile.  Ealy cannot replead this claim in a way that would avoid the existence of adequate state post-deprivation remedies.  See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would

fail to state a claim upon which relief could be granted." (citation omitted));

Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may

properly deny leave to amend where the amendment would not withstand a

motion to dismiss.").

###    D.    Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the

Due Process Clause of the Fourteenth Amendment requires courts to consider

"first, whether any legitimate purposes are served by the[] conditions, and

second, whether the[] conditions are rationally related to these purposes."  See

Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) (Hubbard II) (quoting Union

Cnty. Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983)).  If pretrial

detainees are subjected to conditions that are not reasonably related to a

legitimate governmental objective, an inference may be made that the purpose of

the prison official's action is punishment.  Hope v. Warden York Cnty. Prison, 972

F.3d 310, 326 (3d Cir. 2020).  Thus, "a particular measure amounts to

punishment when there is a showing of express intent to punish on the part of

detention facility officials, when the restriction or condition is not rationally related

to a legitimate non-punitive government purpose, or when the restriction is

excessive in light of that purpose."  Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir.

2007) (quoting Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999)).

As the Third Circuit instructs, courts confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement." Hope, 972 F.3d at 326 (citing Hubbard I, 399 F.3d at 159-60). And, like an Eighth Amendment conditions-of-confinement claim by a convicted prisoner, a Fourteenth Amendment conditions-of-confinement claim by a pretrial detainee requires a showing of deliberate indifference on the part of prison officials. Edwards v. Northampton Cnty., 663 F. App'x 132, 135 (3d Cir. 2016) (nonprecedential) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)).

Ealy's Fourteenth Amendment conditions-of-confinement claim fails because he has not plausibly alleged deliberate indifference by any defendant. Ealy has not alleged who was potentially responsible for the purported conditions, how long he was exposed to them, who had knowledge of the conditions and was deliberately indifferent toward them, or whom he informed about the conditions and subsequently acted with deliberate indifference toward them. Without such fundamental allegations of deliberate indifference by any defendant, dismissal of this claim is required under Section 1915A(b)(1). See Edwards, 663 F. App'x at 135-36.

**E.    Fourteenth Amendment Medical Indifference**

Ealy's remaining two claims allege deliberate indifference to serious medical needs.  Like his other Section 1983 claims, they appear to target different unidentified prison officials, entities that are not appropriate Section 1983 defendants, or no particular defendant at all.

As noted above, Ealy is a pretrial detainee, so his claims implicate the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel-and-unusual-punishments provision.  However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical care claims versus those raised by incarcerated individuals under the Eighth Amendment.  See Thomas v. City of Harrisburg, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim); see also Parker v. Butler Cnty., 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); Miller v. Steele-Smith, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017) (nonprecedential) (same); Goode v. Giorla, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); Edwards, 663 F. App'x at 136-37 (citing Natale, 318 F.3d at 581).  Accordingly,

17

the court will apply existing Eighth Amendment jurisprudence to Ealy's

Fourteenth Amendment medical indifference claims.

The Eighth Amendment to the United States Constitution prohibits the

infliction of cruel and unusual punishments on prisoners.  See Farmer v.

Brennan, 511 U.S. 825, 832 (1994).  In the context of prison medical care, the

Eighth Amendment "requires prison officials to provide basic medical treatment"

to incarcerated individuals.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

To plausibly plead an Eighth Amendment claim of deliberate indifference

regarding inadequate medical care, a plaintiff must allege (1) "a serious medical

need," and (2) "acts or omissions by prison officials that indicate deliberate

indifference to that need."  Natale, 318 F.3d at 582.  A serious medical need is

"one that has been diagnosed by a physician as requiring treatment or one that is

so obvious that a lay person would easily recognize the necessity for a doctor's

attention."  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347

(3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional

refusal to provide care known to be medically necessary, delayed provision of

medical treatment for non-medical reasons, denial of prescribed medical

treatment, and denial of reasonable requests for treatment resulting in

unnecessary suffering or risk of injury.  See Durmer v. O'Carroll, 991 F.2d 64, 68

& n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346).  Deliberate indifference

to serious medical needs is an exacting standard, requiring a showing of

"unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 104

(1976) (citation omitted).  Claims sounding in mere medical negligence will not

suffice.  Rouse, 182 F.3d at 197.

Ealy raises two unrelated claims of deliberate indifference to serious

medical needs.  His first claim involves the failure to classify him as bottom-bunk

status.  The second and more serious claim concerns alleged failure to provide

medical care and medications after repeated requests, resulting in a stroke.  Ealy

has plainly identified serious medical needs.  The problem with his claims is that

they fail to plausibly plead deliberate indifference by any defendant that is a

"person" for Section 1983 purposes.

In his complaint, Ealy asserts that he informed an "intake nurse" at DCP

that he should be classified as bottom-bunk status because he suffers from foot

and ankle problems.  (Doc. 1 ¶ 19).  He does not plead anything further with

respect to this intake nurse's alleged actions or omissions.  This single allegation

does not, in any way, establish deliberate indifference by the intake nurse.

Ealy also alleges that he complained to two different "unknown officer[s]"

about being assigned to the top bunk and that those officers then "contacted

medical," which department told them to deny Ealy's request for assignment to a

bottom bunk.  (Id. ¶¶ 20-23).  These allegations do not implicate deliberate

indifference by the unidentified officers.  Rather, they show that the officers acted

reasonably by (1) contacting the medical department in response to Ealy's claims

of physical disability, and (2) relying on the medical department's advice or

response.  See Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of

a substantial risk to inmate health or safety may be found free from liability if they

responded reasonably to the risk, even if the harm ultimately was not averted.").

        To the extent that Ealy is asserting that some unknown (and unnamed)

medical personnel at DCP wrongfully denied his bottom-bunk request, he does

not allege who such medical personnel were, nor does he attempt to name them

as John or Jane Doe defendants.  If Ealy is attempting to generally sue

PrimeCare Medical, that entity is not a "person" subject to Section 1983 liability,

as fully explained above.  Simply put, Ealy has not plausibly alleged that any

specific defendant—identified or unidentified—acted with deliberate indifference

with respect to his bottom-bunk medical needs.

        The same issue arises with his second medical indifference claim regarding

denial of requested treatment and medication.  Although Ealy plainly identifies a

serious medical need, he does not allege that any identified or unidentified

defendant acted with deliberate indifference toward that need.  (See generally

Doc. 1 ¶¶ 31-38).  He simply maintains that he submitted complaints to the DCP

"medical department" that went unanswered.  Again, the DCP medical department (or PrimeCare) is not a person for purposes of Section 1983 liability.

Furthermore, the one unidentified nurse that Ealy specifically references in this portion of his complaint appears to have acted reasonably by providing medical care, admitting him to the medical department for further treatment, and prescribing him a walking cane for assistance.  (See id. ¶¶ 35-36).  These actions do not reflect deliberate indifference; in fact, they show the opposite.

It is certainly possible that Ealy could amend his pleadings to plausibly state a claim (or claims) for deliberate indifference to serious medical needs.  But his complaint, as it stands, does not do so.  Thus, dismissal without prejudice of these Fourteenth Amendment medical indifference claims is required.

## F.   Official Capacity Claims

Ealy sues most Defendants in their individual and official capacities. (See Doc. 1 ¶¶ 4, 6-10).  Suing Defendants in their official capacities is akin to suing the respective municipalities—Franklin County and Dauphin County— themselves.  See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978).  To assert a Section 1983 claim against a county by way of an official capacity claim against a county employee, a plaintiff must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury. Id. at 690-91.  He must also plausibly plead facts showing that each Defendant is

a decisionmaker endowed with authority to promulgate or establish an official custom or policy.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's authorized decisionmakers" represents an act of official government policy (emphasis added)); McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).

Ealy has not identified any policy promulgated by any Defendant, nor has he alleged that any Defendants would have decision-making authority to establish a custom or policy.  Accordingly, all official capacity claims will be dismissed pursuant to Section 1915A(b)(1) as well.

G.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  Grayson, 293 F.3d at 114.  The court will grant Ealy limited leave to amend.

Ealy is essentially attempting to bring multiple, unrelated lawsuits in a single complaint.  This he cannot do.  The allegations that make up his various Section 1983 claims are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying the instant First Amendment

22

retaliation claim, nor is there a "question of law or fact common to all defendants" such that these claims and additional defendants could be permissively joined together in this action.  See FED. R. CIV. P. 20(a)(2)(B).  It is possible that his medical indifference claims could overlap, but because Ealy fails to specify what defendant or defendants were involved in these claims (or how any particular defendant was deliberately indifferent toward his medical needs), it is impossible to determine whether the targeted unidentified defendants could be joined under Rule 20.

Ealy is free to file additional lawsuits based on these unrelated allegations, although the court notes that each claim would likely require a separate Section 1983 lawsuit and Ealy would be required to pay the filing fee for each case.  See id.; George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); Redding v. Bilinski, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same).  However, because the Fourteenth Amendment deprivation-of-property claim is being dismissed with prejudice, Ealy cannot reassert that claim in a separate lawsuit.

If Ealy chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and

23

without reference to any previous pleadings.  The amended complaint should set

forth Ealy's First Amendment retaliation claim in short, concise, and plain

statements, and in sequentially numbered paragraphs (much like he did in his

original complaint).  Alternatively, Ealy could select a different Section 1983 claim

that has been dismissed without prejudice to replead in the instant action.

Regardless of the claim selected, Ealy must address the pleading deficiencies

identified in this Memorandum.  Most notably, Ealy must clearly set forth the

personal involvement of any defendant (identified or unidentified) in the alleged

constitutional violation.  That is, he must plausibly plead the unconstitutional

action (or inaction) of each defendant he is attempting to sue, and he must

appropriately delineate between unidentified defendants.

Ealy must also sign the amended complaint and indicate the nature of the

relief sought.  He *may not* include unrelated claims against different defendants

in violation of Federal Rule of Civil Procedure 20(a)(2).  If Ealy desires to raise

related state-law tort claims, he must clearly indicate what tort claim he is

asserting, against whom he is asserting it, and what action or omission by a

defendant (or defendants) constituted the claim.

If Ealy files an amended complaint that disregards the foregoing guidance,

that filing will be stricken from the record.  If Ealy does not timely file an

24

appropriate amended pleading, dismissal of his complaint will automatically convert to dismissal with prejudice and the court will close this case.

## IV.   CONCLUSION

Based on the foregoing, the court will dismiss Ealy's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Limited leave to amend will be granted.  An appropriate Order follows.

Date: _____                    BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court