## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VERNON L. EALY, JR.,  :   No. 3:24-CV-0126
       **Plaintiff**  :
       :   (Judge Munley)
  **v.**  :
     :
CHRISTOPHER SCHELL, *et al.*,  :
      **Defendants**  :

FILED
SCRANTON

SEP 2 5 2024

Per _____ AMO
DEPUTY CLERK

### MEMORANDUM

Plaintiff Vernon L. Ealy, Jr., initiated the above-captioned *pro se* action

under 42 U.S.C. § 1983,[1] alleging constitutional violations by officials at two

county prisons. The court dismissed Ealy's initial complaint for failure to state a

claim upon which relief may be granted but provided him leave to amend. Ealy

then filed an amended complaint limited to his claims against officials at Dauphin

County Prison regarding insufficient medical care. Upon screening under 28

U.S.C. § 1915A(a), the court will dismiss in part Ealy's amended complaint.

## I.   BACKGROUND

In his amended complaint, Ealy asserts that he is a pretrial detainee and

that he was transferred to Dauphin County Prison (DCP) on July 11, 2023. (Doc.

21 ¶¶ 1, 10). He avers that, upon arrival at DCP, he was "sent to medical" for an

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

intake.  (Id. ¶¶ 10-11).  There, "Intake Nurse Jane Doe" gathered his mental and physical health information while another nurse took his vitals.  (Id. ¶ 11).  Ealy recounts that he informed Intake Nurse Doe of his medications, told her about his preexisting health conditions, and requested that he be continued on "bottom bunk / bottom tier" status due to his chronic foot issues.  (Id. ¶¶ 12-14).  According to Ealy, Intake Nurse Doe responded by telling him that it was required to sign a medical release form so that his treatment could be continued from his prior prison and that "any previous medications" or previously diagnosed health conditions "would not apply" at DCP and Ealy would "have to start fresh."  (Id. ¶ 15).  Ealy was subsequently housed on A-unit, located in the dayroom, and assigned to the bottom bunk.  (Id. ¶ 16).

The following day, Ealy was moved from A-unit to a different cell block and assigned to the top bunk by an unknown corrections officer.  (Id. ¶ 17).  Ealy claims that he immediately informed the officer about his physical disabilities and the officer told him to put in a sick-call slip to medical about the situation.  (Id.)  Ealy avers that he promptly filled out a sick-call slip as directed.  (Id.)  However, because he remained assigned to the top bunk, Ealy recounts that he had to climb up and down from the top bunk without the use of a chair or ladder, causing pain in his feet and legs.  (Id. ¶ 18).

2

On July 13, 2023, Ealy was moved to F-unit and assigned to the top tier of cells (cell #21) and the top bunk in that cell.  (Id. ¶ 19).  He maintains that he again spoke to a corrections officer about his physical limitations and the problems he was experiencing with the top-bunk assignments.  (Id.)  Ealy alleges that the corrections officer contacted medical about his claims and reported back to Ealy that the medical department had "denied his request" (presumably to be changed to bottom-tier and bottom-bunk status).  (Id.)

Ealy alleges that he struggled for two weeks by having to climb stairs every day and by "jumping up and down on the hard concrete floor" to reach his top bunk.  (Id. ¶ 20).  He claims that the medical department did not answer any of his sick-call slips, even though he filed "multiple complaints."  (Id. ¶¶ 20, 21).  Ealy further alleges that being assigned to the top tier and top bunk resulted in him developing a hernia.  (Id. ¶¶ 22, 34).

In another section of his amended complaint, Ealy alleges that—sometime in August 2023—he suffered a stroke at DCP.  (Id. ¶¶ 27, 28).  He once again claims that he "put in sick-call slips" that went unanswered for two weeks following the alleged stroke.  (Id. ¶ 28).  He also avers that he began to have swelling in his legs and submitted more sick-call requests that went unanswered.  (Id. ¶ 31).  When the swelling intensified to the point where it began to cause ambulation problems, Ealy was escorted to the medical department.  (Id. ¶¶ 31,

32).  There he encountered Head Nurse "Jane Doe," who was alarmed by the swelling and consulted with PrimeCare Doctor "John Doe" about sending Ealy to an outside hospital for treatment.  (Id. ¶ 32).  According to Ealy, Dr. Doe denied this referral request.  (Id.)  Ealy was given two EKGs, a walking cane, and an extra blanket for his legs and sent back to his cell.  (Id.)

Ealy claims that in October 2023 he was finally transferred to an outside hospital for treatment.  (Id. ¶ 33).  He maintains that if DCP medical department personnel had treated him appropriately or more promptly, his injuries could have been prevented.  (Id.)  He sues five defendants: Intake Nurse Jane Doe, Head Nurse Jane Doe, PrimeCare Doctor John Doe, Health Service Administrator Lensbower, and PrimeCare Medical, Inc. (PrimeCare).  (Id. ¶¶ 4-8).  He seeks a declaration that his constitutional rights were violated, as well as compensatory and punitive damages.  (Id. at pp. 5-6).

## II.  STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees.  See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"  28 U.S.C. § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to

screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.  See Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)).  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.  Id. (quoting Iqbal, 556 U.S. at 679).  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."  Id. (quoting Iqbal, 556 U.S. at 679).  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 681.

Because Ealy proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Ealy, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

Ealy's amended complaint sounds primarily in the Fourteenth Amendment, deliberate indifference to serious medical needs concerning the alleged lack of appropriate medical care at DCP.  It appears that Ealy is also asserting a state-law claim of negligence with respect to DCP medical staff's failure to transfer him to a hospital following his stroke and high blood pressure.  (See Doc. 21 ¶ 40). However, it is unclear whether Ealy intends to assert a claim of professional negligence (*i.e.*, medical malpractice) or simple negligence.

Ealy's amended complaint, like his original complaint, is deficient in many respects.  The court will discuss each of his pleading deficiencies in turn.

### A.   "Person" for Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  Rehberg v. Paulk, 566 U.S. 356, 361 (2012) (citing Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (citing 42 U.S.C. § 1983)).  Only "persons" are subject to suit under Section 1983, and entities such as prisons, agencies, and private businesses do not qualify as "persons."  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-65, 71 (1989); Slagle v. Cnty. of Clarion, 435 F.3d 262, 264 n.3 (3d Cir. 2006) (affirming on other grounds and observing that district

court properly "dismissed Clarion County Jail as a defendant in this case," quoting district court's reasoning that "'it is well established in the Third Circuit that a prison is not a "person" subject to suit under federal civil rights laws'"); Stankowski v. Farley, 487 F. Supp. 2d 543, 554 (M.D. Pa. 2007) (finding that PrimeCare Medical is not a "person for purposes of Section 1983" and thus not subject to liability under that statute); see also Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (holding that "New Jersey Prison Medical Department" was a state agency and not a "person" under Section 1983); Ali v. Ann Klein Forensic Ctr., No. 21-CV-316, 2022 WL 138084, at *3 (D.N.J. Jan. 14, 2022) (finding that state hospital "is not a 'person' within the meaning of § 1983").

Ealy again attempts to sue PrimeCare Medical, Inc., alleging generally that it failed to provide adequate medical care for him. PrimeCare, however, is not a "person" capable of taking unconstitutional action and therefore Ealy has failed to assert a viable Section 1983 claim against this business entity. Moreover, Ealy does not allege an unconstitutional policy or custom by PrimeCare such that a Section 1983 suit could be maintained against Dauphin County by suing PrimeCare. See, e.g., Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). Ealy merely alleges that PrimeCare failed to "properly train the prison medical staff at DCP," which is a legal conclusion that is bereft of plausible facts and therefore may be disregarded. See Connelly, 809 F.3d at 787. Thus,

any Section 1983 claim against PrimeCare will again be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief.

### B.    Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. Id. (quoting Rode, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x

9

924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Ealy sues Health Service Administrator Lensbower, but he does not allege any personal involvement by this Defendant. Lensbower is mentioned only in Ealy's defendant-identification section and in the claims for relief. (See Doc. 21 ¶¶ 6, 37-43). These paragraphs, however, do not allege personal involvement by Lensbower; rather, they group most or all Defendants together and claim that Defendants collectively provided deficient medical care. (See id. ¶¶ 37-43). Because Lensbower did not have any personal involvement in the allegedly unconstitutional conduct, the claims against him must be dismissed under Section 1915A(b)(1) as well.

## C.    Official Capacity Claims

Ealy sues all Defendants in their individual and official capacities. (See id. ¶¶ 4-8). Suing Defendants in their official capacities is akin to suing Dauphin County itself. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978). To assert a Section 1983 claim against a county by way of an official capacity claim against a county employee, a plaintiff must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.

Id. at 690-91.  He must also plausibly plead facts showing that each Defendant is

a decisionmaker endowed with authority to promulgate or establish an official

custom or policy.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)

(explaining that a decision to adopt a particular course of action made by the

"government's authorized decisionmakers" represents an act of official

government policy (emphasis added)); McTernan v. City of York, 564 F.3d 636,

658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal

decisionmaker" in his attempt to assert municipal Section 1983 liability).

     As noted above, Ealy has not identified a policy promulgated by any

Defendant, nor has he plausibly alleged that any Defendants would have

decision-making authority to establish a custom or policy.  Accordingly, all official

capacity claims will again be dismissed pursuant to Section 1915A(b)(1).

### D.    Fourteenth Amendment Medical Indifference

     The gravamen of Ealy's amended complaint is alleged deliberate

indifference to serious medical needs.  Ealy was a pretrial detainee at the time of

the events, so his claims implicate the Due Process Clause of the Fourteenth

Amendment rather than the Eighth Amendment's cruel-and-unusual-punishment

provision.  However, it does not appear that the United States Court of Appeals

for the Third Circuit has established or adhered to a different standard with

respect to Fourteenth Amendment pretrial detainee medical care claims versus

those raised by incarcerated individuals under the Eighth Amendment.  See

Thomas v. City of Harrisburg, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying

Eighth Amendment standard to pretrial detainee's medical care claim); see also

Parker v. Butler Cnty., 832 F. App'x 777, 780 & n.1 (3d Cir. 2020)

(nonprecedential) (applying Eighth Amendment standard to pretrial detainee

medical care claim while acknowledging Fourteenth Amendment is source of

right); Miller v. Steele-Smith, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017)

(nonprecedential) (same); Goode v. Giorla, 643 F. App'x 127, 129 & n.3 (3d Cir.

2016) (nonprecedential) (same); Edwards v. Northampton Cnty., 663 F. App'x

132, 136-37 (3d Cir. 2016) (nonprecedential) (citing Natale v. Camden Cnty Corr.

Facility, 318 F.3d 575, 581 (3d Cir. 2003)).  Accordingly, the court will apply

existing Eighth Amendment jurisprudence to Ealy's Fourteenth Amendment

medical indifference claims.

In the context of prison medical care, the Eighth Amendment "requires

prison officials to provide basic medical treatment" to incarcerated individuals.

Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  To state an Eighth

Amendment deliberate indifference claim regarding inadequate medical care, a

plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the

defendants were deliberately indifferent to that need; and (3) the deliberate

indifference caused harm to the plaintiff."  Durham v. Kelley, 82 F.4th 217, 229

(3d Cir. 2023) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury.  See Durmer v. O'Carroll, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting Lanzaro, 834 F.2d at 346).  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted).  Claims sounding in mere medical negligence will not suffice.  Rouse, 182 F.3d at 197.

In his amended complaint, Ealy has plainly identified serious medical needs.  But like his initial complaint, his allegations fail to plausibly allege deliberate indifference by the named Defendants.  The court will review Ealy's allegations against each Defendant in turn.

Ealy first asserts that he informed Intake Nurse Jane Doe about his prescription medications, preexisting health conditions, and bottom-bunk needs. He then admits that he was assigned to a bottom bunk in his first cell assignment after this intake. Such allegations, of course, do not evince deliberate indifference to serious medical needs.

It appears that Ealy's principal complaint about Intake Nurse Doe is that she failed to properly perform her duties after the intake and that collection of the intake information and medical release forms had to be repeated two weeks later by a nurse practitioner. (See Doc. 21 ¶ 25). According to Ealy, the nurse practitioner complained that she was "always having to redo the work" of Intake Nurse Doe. (Id.) These allegations, at most, sound in professional negligence, i.e., medical malpractice. They simply do not rise to the level of a constitutional infringement. Ealy, however, has not asserted a professional negligence claim against Intake Nurse Doe for her purportedly deficient intake performance.

Ealy next targets Head Nurse Jane Doe. But his allegations against this Defendant do not come close to stating a claim for negligence, let alone for deliberate indifference. Ealy avers that, when he presented with swollen legs at the medical department, this nurse immediately contacted a doctor and sought to transfer Ealy to an outside hospital. When the overseeing physician declined the transfer, she performed multiple EKGs, prescribed Ealy a walking cane, and

gave him an extra blanket for his legs.  These actions do not reflect deliberate indifference or negligence; in fact, they show the opposite.

The final person Ealy sues for deficient medical care is PrimeCare Doctor John Doe.  Yet the only facts alleged involving this physician are that, when Head Nurse Doe contacted him regarding Ealy's swollen legs, he denied her request to transfer Ealy to an outside hospital and instead told her to "just keep an eye on [him]."  (Id. ¶ 32).  Again, such allegations do not implicate a *constitutional* violation.  After all, it is well settled that mere disagreement as to a medical provider's professional judgment or treatment plan does not rise to the level of a constitutional infringement.  See Lanzaro, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); see also Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

Furthermore, Ealy has not alleged that Dr. Doe's refusal to transfer Ealy to an outside hospital resulted in harm, the third element of a medical indifference claim.  At the point by which Dr. Doe was contacted by Head Nurse Doe, Ealy concedes that he had already suffered the purported hernia and stroke.  He does not include any allegations that Dr. Doe's transfer denial caused him additional harm.[2]

In sum, Ealy's amended complaint does not plausibly plead a claim of medical indifference as to any specified Defendant.  Nevertheless, it does appear that Ealy could state a Fourteenth Amendment claim against one or more unspecified providers in the medical department at Dauphin County Prison.  For example, Ealy alleges that the "medical department" denied his reasonable requests for bottom-tier and bottom-bunk placement for several weeks, resulting in a hernia.  (Doc. 21 ¶¶ 17, 19, 20, 21, 34).  He further alleges that after suffering a stroke in August 2023, his multiple requests for medical treatment

---

[2] To the extent that Ealy attempts to assert a negligence claim against Dr. Doe, (see Doc. 21 ¶ 40), he has not done so.  Initially, Ealy's claim must be construed as a professional negligence claim (rather than a simple negligence claim) because it concerns a question involving medical judgment and "the conduct at issue constituted an integral part of the process of rendering medical treatment."  See Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007) (nonprecedential) (quoting Ditch v. Waynesboro Hosp., 917 A.2d 317, 322, 323 (Pa. Super. Ct. 2007)).  Yet simply alleging that Dr. Doe should have sent him to an outside hospital for his leg swelling but did not is insufficient to state a medical malpractice claim under Pennsylvania law.  Ealy has not plausibly alleged that this conduct was a departure from generally accepted standards of medical care, proximately caused him harm, or resulted in actual damages.  See Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (citation omitted).

went unanswered.  (Id. ¶ 28).  Additionally, Ealy contends that when he was experiencing high blood pressure and leg swelling, he put in "more sick call slips that went unanswered."  (Id. ¶ 31).  Ealy does not assert (likely because he does not know) who ignored or rejected these requests for treatment, but such claims—if alleged against an appropriate, identified defendant—could be cognizable under Section 1983.

The court, therefore, will permit this lawsuit to proceed on an individual capacity Fourteenth Amendment medical deliberate indifference claim against a "John Doe" or "Jane Doe" defendant in Dauphin County Prison's medical department who ignored or rejected Ealy's alleged requests for bottom-bunk placement and for medical treatment in or around July and August 2023.  Limited discovery will be permitted to identify an appropriate medical department defendant (or defendants) in this case.  If no appropriate prison official can be identified through discovery, the court will be constrained to dismiss this case under Federal Rule of Civil Procedure 4(m) because no service of process can be effectuated.

### E.     Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  Grayson, 293 F.3d at 114.  Further

17

leave to amend will be denied, as Ealy has failed to plausibly plead most of his claims even after "amendments previously allowed." See Foman v. Davis, 371 U.S. 178, 182 (1962); Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile"). This case will proceed on Ealy's individual capacity Fourteenth Amendment claim against the yet-to-be-identified prison medical provider (or providers) who allegedly ignored or rejected Ealy's requests for bottom-bunk placement and above-referenced medical treatment.

## IV.   CONCLUSION

Based on the foregoing, the court will dismiss in part Ealy's amended complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Ealy's Fourteenth Amendment medical indifference claim may proceed, for now, against the yet-to-be-identified medical provider or providers at Dauphin County Prison, on the condition that at least one proper defendant is able to be determined through pre-service discovery. An appropriate Order follows.

Date: 9/24/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

18